UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BRIAN M. LANDRY, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 07-175-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question whether the residual functional capacity assigned to the plaintiff by the administrative law judge and the hearing testimony of the vocational expert were each supported by substantial evidence. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Gooderman v. Secretary of Health & Human Servs.*, 690 F.3d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 1997, Finding 1, Record at 18; that before that date the plaintiff suffered from cervical stenosis and tendonitis of the right shoulder, impairments that were severe but did not, singly or in combination, meet or medically

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me by telephone on June 26, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, *id.* at 18-19; that before the date last insured, the plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and ten pounds frequently, to stand or walk for 30 minutes at a time for a total of three hours in an eight-hour workday, to sit for one hour at a time for a total of six hours in an eight-hour workday, to push and pull 20 pounds occasionally and ten pounds frequently, to use the right foot occasionally for controls, to climb, balance, stoop, kneel, crouch, and crawl occasionally, and to use the right hand for reaching overhead, and that he needed to avoid concentrated exposure to vibration and hazards such as uneven surfaces and unprotected heights, Finding 5, *id.* at 19; that the plaintiff's testimony about the intensity, duration, and limiting effects of the impairments was not entirely credible, Finding [6], *id.* at 20; that the plaintiff was unable to perform his past relevant work through the date last insured, Finding 6 [sic], *id.* at 24; that given his age (45 at date of onset), high school education, transferable work skills and residual functional capacity, the plaintiff is capable of performing jobs existing in significant numbers in the national economy, Findings 7-10, *id.*; and that the plaintiff therefore had not been under a disability, as that term is defined in the Social Security Act, from the alleged date of onset, August 30, 1997, through the date last insured, September 30, 1997, Finding 11, *id.* at 26. The Appeals Council declined to review the decision, *id.* at 8-10, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 647 F.2d 622, 623 (1st Cir. 1989).

      The standard of review herein is whether the commissioner's determination is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

The plaintiff contends that, because there were no state agency assessments of the plaintiff's physical residual functional capacity in the record before the administrative law judge, the only available evidence was the retrospective opinion of the plaintiff's treating physician and the testimony of the medical expert at the hearing. Since the administrative law judge's conclusion was inconsistent with that evidence, the plaintiff contends, he must have impermissibly interpreted raw medical data to reach his conclusion. Statement of Specific Errors ("Itemized Statement") (Docket No. 8) at 2-5.

The plaintiff first challenges the administrative law judge's decision to give little weight to a letter signed in 2006 by Dr. Majka, who treated him between 1987 and 1996. As the administrative law judge noted, the doctor's signature is illegible and the document is also signed by the doctor's wife as "Durable Power of Attorney." Record at 255. The plaintiff asserts, in conclusory fashion, that "[t]he reasoning advanced by the ALJ does not satisfy the criteria for dismissing the report of a treating doctor." Itemized Statement at 4. The plaintiff does not

identify those criteria, but he may mean to refer to his earlier assertion that "[t]he ALJ is required to demonstrate affirmatively the support for his decision and the residual functional capacity supporting it." *Id*. at 2. If those are the criteria the plaintiff means to invoke, the administrative law judge's decision meets them.

> The administrative law judge found that the doctor's retrospective opinion
>
>> is not consistent with the level of impairment of the cervical spine noted in Dr. Majka's notes made 12 years ago at the time of the actual treatment in questions (Exhibit 5F). The only mention of potential "cervical spine problems" found in those notes are four very cursory notations from March 22 through May 17, 1994 that indicate suspicion of a cervical problem that eventually evolved into a continuing diagnosis of right shoulder bursitis or tendonitis continuing through to the end of Dr. Majka's treatment without any further mention of cervical dysfunction. Thus, there is no real support for the degree of limitation set out in the recent statement witnessed by Doctor Majka's wife. Moreover, such extreme limitations are not consistent with the other contemporaneous medical records discussed above. Finally, great weight was given to Dr. Majka's treatment notes made while he was fully and actively involved in the practice of medicine. However, such deference is not due an opinion rendered through dim and distant hindsight.

Record at 23. He also discusses Dr. Majka's contemporaneous notes on page 22 of the record. The administrative law judge's decision to disregard the opinion in the 2006 document to the effect that, by August 1997, shortly before his date last insured, the plaintiff "could [not] have even performed at a sedentary level of exertion for an eight hour day given the difficulties with his arm, shoulder, and cervical spine[,]" *id*. at 255, is explained by reference to applicable regulations and rulings. 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* (Supp. 2007) at 150.

The administrative law judge's opinion does not cite the testimony at hearing of the medical expert, Dr. Olaf Anderson, but the plaintiff argues that the residual functional capacity determined by the administrative law judge for the period before the date last insured "does not

correspond to the opinion of Dr. Anderson." Itemized Statement at 5.  The plaintiff does not explain why the residual functional capacity is required to be consistent with the medical expert's testimony, or cite authority for this proposition.  When the administrative law judge asked the medical expert whether he could figure out which limitations he would expect to have seen in the plaintiff in 1996 or 1997 with respect to lifting, carrying, or other exertions, Dr. Anderson replied:

> Well, Dr. Schubert, I think, had limited him to light work from his lower back.  But he did say – again its '84 and things can change over time, they can get worse, they can get better.  And all we really have significant in the timeframe we're interested in is the patient's story.  From what I know I think he was limited from his lower back to probably light work.  I don't think he could have done anything very strenuous there or significant disease [sic].  As far as the shoulder goes, if he had numbness going up and down he might have been a little bit clumsy and fine work might have been tricky for him so that would have perhaps limited sedentary work to some extent.

Record at 329.  Later he added: "I would think light, manual labor sort of work would be possible at that point."  *Id*. at 330.  The administrative law judge found that the plaintiff had the residual functional capacity for light work with a sit/stand option at the relevant time.  *Id*. at 19; 20 C.F.R. § 404.1567(b).  This is in fact consistent with Dr. Anderson's opinion.  I see nothing in Dr. Anderson's testimony that is inconsistent with the additional limitations included in the residual functional capacity by the administrative law judge.[2]

---

[2] At oral argument, counsel for the plaintiff identified the way in which the assigned residual functional capacity was inconsistent with the medical expert's testimony as a failure to include the limitation on "fine motor skills" that he contended was "inherent" in the testimony about numbness "going up and down."  But the medical expert's testimony was conditional: he said "if [the plaintiff] had numbness going up and down he might have been a little bit clumsy[.]"  Assuming *arguendo* that this description is the equivalent of limited fine motor skills in both hands, the testimony is based on the plaintiff's own testimony, rather than anything in the available medical records.  The administrative law judge specifically found that the plaintiff's statements about the limiting effects of his symptoms were not entirely credible, Record at 20, and discussed Dr. Majka's records showing a negative x-ray of the plaintiff's right shoulder in April 1996 "followed by symptomatic treatment for shoulder pain with varying diagnoses[,] *id*. at 22.  If, as appears, the administrative law judge rejected the plaintiff's testimony to the effect that he had numbness going up and down his right arm at the relevant time, his conclusion with respect to residual functional capacity is not inconsistent with the medical expert's conditional testimony on this point.

Case 1:07-cv-00175-JAW Document 14 Filed 06/30/08 Page 6 of 8 PageID #: 32

Because I reject the two premises underlying the plaintiff's conclusion that the administrative law judge must have interpreted raw medical data in reaching his decision as to residual functional capacity, I need go no further to reject it outright. This means that the plaintiff's next argument, that the vocational expert's testimony is not relevant as a result of the lack of substantial evidence to support the assigned residual functional capacity, Itemized Statement at 5-6, fails as well.

The plaintiff appears to argue also that the vocational expert's testimony with respect to the sit/stand option was inconsistent with the *Dictionary of Occupational Titles* ("DOT") (U.S. Dep't of Labor, 4th ed. rev. 1991) and thus violated Social Security Ruling 83-12, independent of the challenge to the assigned residual functional capacity. *Id.* at 6. He asserts that the Ruling "makes particular note of the fact that unskilled jobs, which all of those testified to by the vocational expert were, are not ordinarily structured for the sit/stand option." *Id.* He faults the administrative law judge for failing to mention the Ruling "or question the vocational expert on the Commissioner's assumption concerning these jobs." *Id.*

The opinion refers to four specific jobs, only one of which is unskilled. Record at 25. Thus, there are three jobs as to which the "failure" to address an excerpt from a Ruling dealing with unskilled jobs makes no difference. Those three jobs are certainly sufficient to support the finding at Step 5 that the plaintiff could have performed jobs existing in significant numbers in the national economy before September 30, 1997. Even with respect to the unskilled job, callout operator, *id.*, the administrative law judge stated:

> The vocational expert's "sit/stand" testimony is arguably inconsistent with the information contained in the Dictionary of Occupational Titles (DOT) to the extent that the DOT does not explicitly define the nature and extent of any sit/stand options nor has it been updated to include vocational variations that have developed over the years. The undersign[ed] accepts the vocational expert's testimony that these jobs

6

> actually allow more freedom for a worker to sit or stand at will than is suggested by the outdated DOT.

*Id*. at 25. *See id*. at 378-82 (vocational expert's testimony that DOT "is so old that . . . it wouldn't indicate sit/stand" for the identified jobs).

The administrative law judge's explanation of his decision to accept the vocational expert's testimony on the possible discrepancy between her testimony and the DOT is sufficient under Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2007) at 244 ("When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."). Nothing more is required. I note also that the Ruling cited by the plaintiff was issued in 1983, well before the "old" DOT, which was last revised in 1991, and is likely to suffer from the same deficiencies with respect to the status of the sit/stand option for jobs in 1997. Indeed, Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2007), at 158, says the following about the sit/stand option:

> Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC [residual functional capacity] assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

To the extent that the residual functional capacity assigned to the plaintiff by the administrative law judge in this case may properly be characterized as one for sedentary work, the administrative law judge complied with this portion of SSR 96-9p.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2008.

/s/ John H. Rich III  
John H. Rich III  
United States Magistrate Judge